Filed 2/3/14  P. v. Caracciola CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RANAE DEEANN CARACCIOLA,<br><br>    Defendant and Appellant. | C074163<br><br>(Super. Ct. Nos. CRF121243, CRF122477) |

Counsel for defendant Ranae Deeann Caracciola has filed an opening brief that sets forth the facts of the case and asks this court to review the record and determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436.)  Defendant filed a supplemental brief contending she received ineffective assistance of counsel because her recent history as a domestic violence victim was not adequately raised as a special circumstance justifying a grant of probation.  We address this issue, in addition to undertaking a review of the record as required by *Wende*, and affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

*Sutter County Case No. CRF121243*

On December 16, 2011, Donald Dewey reported that his home on Rose Lane had been burglarized while he and his wife were out of town. Approximately $5,000 of Christmas gifts and $2,000 worth of silver coins had been stolen. No fingerprints were found.

On April 7, 2012, Randall Suoja reported that approximately $1,850 worth of tools had been stolen from his garage and trailer, located on Rose Lane.

On April 17, 2012, Maureen Rose returned to her home on Peach Tree Lane and noticed an open cabinet. The next morning, she noticed her computer, iPod, Kindle electronic reader, compound bow, and some jewelry were missing. The total value of the stolen items was approximately $3,250. A wheelbarrow was under the bathroom window and the screen had been removed. Rose reported that she suspected her friend, defendant Ranae Deeann Caracciola, had stolen the items. She explained that during a baseball game in which both their children were participating, defendant said she had errands to run and asked Rose to text her to keep her updated on her child's performance during the game while she was gone. Defendant's ex-husband later told Rose he had seen her missing bow in defendant's car.

Defendant was on summary probation for a prior conviction for driving under the influence and, on April 20, 2012, officers went to her residence to conduct a probation search. She was home and consented to a search of her residence and car. Officers found Rose's compound bow during the search. Defendant claimed Rose's son had left it at her house a few weeks earlier. When one of the officers asked if defendant's cell phone records would disclose she had been near Rose's home at the time of the burglary, defendant claimed she had entered Rose's home to retrieve some Gatorade but she thought she had permission to do so. The officer then asked defendant where the remaining stolen property was and defendant answered, " 'Inside.' "

2

Defendant was informed of her *Miranda*[1] rights, which she waived, and then admitted she had burglarized Rose's home. She stated she stole the property to support her methamphetamine addiction and directed the officers to much of the stolen property. Officers also located pawn slips for some of the stolen property. They also located two baggies containing methamphetamine and two morphine pills. Later that day, defendant also admitted to the burglaries of Dewey's home and Suoja's garage and trailer. Some of Dewey's stolen property was located in defendant's residence and car.

Defendant told officers she had been struggling with drug and alcohol problems and had sold some of the items for money and drugs. She later gathered and returned more of the stolen property.

Defendant was charged with three counts of first degree burglary, possession of methamphetamine, and possession of morphine without a prescription.

*Sutter County Case No. CRF122477*

On October 18, 2012, the manager at Sanchez Truck Repair & Towing reported that an unauthorized person had attempted to cash a check from his business at Harry's Liquor but the clerk had refused to cash it. Another attempt had been made to cash a check from his business at Wilbur Market but, again, the cashier had refused to cash it. The cashier kept a copy of the check, which was dated October 3, 2012, made payable to defendant in the amount of $475. The check was not signed by anyone at the business. The cashier had also retained a copy of defendant's identification and said the identification matched the person who had presented it.

Defendant was charged with second degree burglary, uttering a bad check, and forging a check. As to each count, it was further alleged that defendant had been released on bail at the time of the offense.

---

[1]     *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].

3

On April 2, 2013, defendant rejected the prosecutor's offer to resolve both cases for a prison term of five years four months. Instead, on April 8, 2013, defendant pled guilty or no contest to all counts in both cases, and admitted the enhancements, with the hope that the trial court would consider hers to be an unusual case pursuant to Penal Code section 1203, subdivision (e)(4) and grant her probation.

Prior to entering her change of plea and pending sentencing, defendant was participating in the Salvation Army drug rehabilitation program. She was ejected from the program due to a conflict with another resident but had been accepted for reentry after sentencing. She was also accepted into the Teen Challenge residential program but on the waiting list.

On June 21, 2013, the trial court denied defendant's request for probation and sentenced her to an aggregate term of 12 years in state prison, as follows: the upper term of six years for the Dewey burglary; two consecutive 16-month terms (one-third the midterm) for the two other first degree burglaries; a consecutive eight months (one-third the midterm) for possession of methamphetamine; a consecutive eight months (one-third the midterm) for the second degree burglary; and a consecutive two years for the on-bail enhancement. The trial court stayed eight month terms for possession of morphine, uttering a bad check, forging a check.

The trial court imposed various fines and fees and ordered defendant to pay victim restitution in the amount of $14,015.59. Defendant was awarded 13 days of presentence custody credit.

Defendant appeals.

## DISCUSSION

### I

### *Ineffective Assistance Of Counsel*

Defendant contends her trial counsel was constitutionally ineffective because he did not adequately raise her recent history as a domestic violence victim as a special

4

circumstance justifying a grant of probation. She expressly disclaims that she committed her crimes as a result of domestic violence trauma she endured at the hands of her ex-husband, however, she argues her counsel should have presented a copy of the restraining order she obtained against her ex-husband, character letters, and her mental health report, and argued the domestic violence supported a finding that this is an unusual case where probation should be granted.

"To prevail on a claim of ineffective assistance of counsel, defendant 'must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice.' " (*People v. Hart* (1999) 20 Cal.4th 546, 623.) "Prejudice occurs only if the record demonstrates 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' [Citation.]" (*People v. Lucero* (2000) 23 Cal.4th 692, 728.) Defendant fails to meet her burden.

First, we note that defendant expressly disclaims that she committed her crimes as a result of domestic violence trauma. Indeed, she maintained throughout the trial court proceedings that she committed the crimes to support her methamphetamine addiction. Thus, it is unclear precisely how defendant believes her domestic violence trauma creates an unusual circumstance, other than her statement that her criminal activity did not resume (after a decade of inactivity) until after the domestic violence. In any event, while trial counsel emphasized the drug addiction as a special circumstance, he repeatedly included in his argument and analysis the explanation that defendant had relapsed into drug addiction after her marriage broke down, *and noted that defendant's ex-husband was accused of domestic violence*. Thus, it appears trial counsel *did* attempt to introduce the concept that the domestic violence contributed to defendant's current crimes while reconciling it with defendant's primary explanation of committing the crimes to support her drug addiction.

5

Second, defendant's contention that trial counsel was ineffective because he did not present copies of the restraining order she obtained against her ex-husband, character letters, and her mental health report, is baseless. Trial counsel did introduce defendant's mental health report into evidence and it was expressly considered by the trial court. The character letters were attached to the probation officer's report. Furthermore, defendant fails to establish the relevance of the actual restraining order or the prejudice due to its absence -- particularly considering the prosecutor did not object to defense counsel's statement that defendant's ex-husband was accused of domestic violence.

Finally, defendant's claim fails because it is based largely on facts outside the appellate record. (*People v. Lucero, supra*, 23 Cal.4th at pp. 728-729.) Defendant's history of domestic violence is not part of the record, nor does the record contain any evidence of the impact such abuse may have had on defendant's mental state or criminal activity.[2] Nor does the record reflect that trial counsel was given an opportunity to explain the reasons for the challenged omission. As defendant's assertion of ineffective assistance of counsel is based on facts outside the appellate record, it is not cognizable on appeal. (See *People v. Pope* (1979) 23 Cal.3d 412, 426.)

With respect to the additional cursory allegations in her supplemental brief of undue influence related to activity surrounding her family law case, we note again that this court is limited to the record on appeal. We may not speculate about matters that may or may not have occurred outside the record. Thus, to the extent that " 'defendant's claim is dependent upon evidence and matters not reflected in the record on appeal, we

---

[2]    To the extent the impact of the domestic violence on defendant's mental state was included as part of the mental health report, as defendant implies in her supplemental brief, the mental health report, although not contained in the record on appeal, was in evidence and considered by the trial court.

6

decline to consider it at this juncture.' [Citation.]" (*People v. Jenkins* (2000) 22 Cal.4th 900, 952.)

## II

### *Wende Review*

Having also undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to defendant.

## DISPOSITION

The judgment is affirmed.

      ROBIE      , J.

We concur:

      HULL      , Acting P. J.

      HOCH      , J.